# UNITED STATES ARMY COURT OF CRIMINAL APPEALS

Before
MULLIGAN, BROOKHART, and SCHASBERGER
Appellate Military Judges

**UNITED STATES, Appellee**
v.
**Staff Sergeant HERBERT B. CONNER III**
**United States Army, Appellant**

ARMY 20180240

Headquarters, United States Army Maneuver Center of Excellence
Richard J. Henry and Christopher E. Martin, Military Judges
Colonel Jacqueline L. Emanuel, Staff Judge Advocate

For Appellant: Lieutenant Colonel Tiffany D. Pond, JA; Lieutenant Colonel Todd W. Simpson, JA; Captain Heather M. Martin, JA (on brief).

For Appellee: Colonel Steven P. Haight, JA; Lieutenant Colonel Eric K. Stafford, JA; Major Jeremy S. Watford, JA; Captain Natanyah Ganz, JA (on brief).

9 August 2019

------------------------------
SUMMARY DISPOSITION
------------------------------

SCHASBERGER, Judge:

An enlisted panel convicted appellant of assault consummated by a battery, assault using a firearm, and indecent conduct.[1] Appellant challenges his conviction

---

[1] An enlisted panel sitting as a general court-martial convicted appellant, contrary to his pleas, of one specification of assault consummated by a battery, one specification of simple assault using a firearm, and one specification of indecent conduct in violation of Articles 128 and 134, Uniform Code of Military Justice, 10 U.S.C. §§ 928, and 934 [UCMJ]. The panel acquitted appellant of one specification of indecent exposure, charged as a violation of Article 120c, UCMJ. The panel sentenced appellant to a bad-conduct discharge, thirty-six months of confinement, a reprimand, and reduction to the grade of E-1. The convening authority approved appellant's sentence as adjudged.

for assault consummated by a battery, arguing that the government did not meet its evidentiary burden. After a careful review of the record, we agree and therefore hold appellant's conviction of that specification factually insufficient.[2]

## BACKGROUND[3]

In the early morning hours of New Year's Day, 2018, appellant and his neighbors were ringing in the New Year at a party with lots of alcohol. The party was at appellant's residence in a housing area on Fort Benning. Staff Sergeant (SSG) MG was walking off his own New Year's Eve celebration and came upon the party. He entered appellant's residence and struck up a conversation with some of the party-goers. One of appellant's neighbors shared SSG MG's love of cars and took SSG MG across the street to look at his Chevrolet Camaro.

While outside appellant's residence, SSG MG and the neighbor witnessed appellant and SSG DM pushing each other while arguing, but did not see either party punch or strike the other. Staff Sergeant MG grabbed SSG DM and escorted him across the street while the neighbor restrained appellant. Staff Sergeant MG wound up sitting on SSG DM to calm and restrain him. Appellant broke away from the neighbor and approached SSG MG and SSG DM stating he would "kick [SSG DM's] ass." When SSG MG got in the way and told appellant he would not allow him to continue the fight, appellant went to his car and grabbed his pistol. Appellant then approached SSG MG with the pistol stating "how about now," and ultimately held the pistol against SSG MG's head. One of the party-goers called the police to report the altercations.

When the police arrived, they observed people pushing, shoving, and yelling at each other. Appellant was inside when the police arrived. The police detained several individuals. The first person they handcuffed was SSG DM; the arresting officer felt he was the biggest threat as he was drunk, belligerent, and yelling. At the time, he was bleeding from injuries to his face. The police also handcuffed other party-goers. While the police were assessing the situation, appellant emerged from his residence. SSG MG approached the police and identified appellant as the individual who put a gun to his head. Based on SSG MG's demeanor, the police

---

[2] We have considered the matters personally raised by appellant pursuant to *United States v. Grostefon*, 12 M.J. 431 (C.M.A. 1982), and find they merit neither discussion nor relief.

[3] We do not provide the background for appellant's conviction of indecent conduct as it is unrelated to the specification at issue. The record is replete with evidence supporting appellant's conviction on that charge.

handcuffed SSG MG. The police then arrested appellant. Appellant was bleeding profusely from his hand when he was arrested. Eventually, the police took SSG DM and appellant to the hospital for medical treatment. Later, appellant made a sworn statement in which he admitted that he and SSG DM got into a fight and were injured. He did not elaborate on the specifics of the altercation further.

The evidence adduced by the government at trial for the assault consummated by a battery specification exclusively included appellant's sworn statement, SSG DM's medical records, and the testimony of SSG MG, the 911 caller, and the police officers. No one testified regarding the events leading up to or during appellant's altercation with SSG DM. Neither appellant nor SSG DM testified.

## LAW AND DISCUSSION

Article 66, UCMJ, establishes our statutory duty to review a record of trial for legal and factual sufficiency de novo. *United States v. Walters*, 58 M.J. 391, 395 (C.A.A.F. 2003). We may affirm only those findings of guilt that we find correct in law and fact and determine, based on the entire record, should be affirmed. *Id.*

In weighing factual sufficiency, we take "a fresh, impartial look at the evidence," applying "neither a presumption of innocence nor a presumption of guilt." *United States v. Washington*, 57 M.J. 394, 399 (C.A.A.F. 2002). To affirm a conviction, "after weighing the evidence in the record of trial and making allowances for not having personally observed the witnesses, [we must be] convinced of [appellant's] guilt beyond a reasonable doubt." *United States v. Turner*, 25 M.J. 324, 325 (C.M.A. 1987).

Appellant argues that with no evidence about who started the fight, the government did not prove that his actions were done with unlawful force or violence. Specifically, appellant asserts the judge properly instructed the members on the defense of self-defense and the government did not refute this defense.

The evidence clearly establishes a fight between appellant and SSG DM. We are mindful that if the fight was a mutual affray, appellant would not be able to use the defense of consent to defend against a charge of assault consummated by a battery. In most circumstances, actual consent "does not render what would otherwise be a battery lawful." *United States v. Arab*, 55 M.J. 508, 516 (Army Ct. Crim. App. 2001). As a military society, we have an interest in protecting people from harm and disorder and have, as a matter of policy, excepted out self-defense in cases of mutual combat. *See* Rule for Courts-Martial [R.C.M.] 916(e)(4).

Since consent is not a defense, we next look to see whether appellant's claim of self-defense has any evidentiary support and if so, whether there is evidence to refute the claim. Appellant's self-defense claim is questionable at best. The only evidence which raises the specter of self-defense is that SSG DM could have been

3

the aggressor. The evidence of this is far from clear. While it is true that by the time the police arrived SSG DM was the most aggressive towards the police, SSG DM's aggressiveness towards the police does not mean he was the aggressor with respect to appellant.

We find a lack of evidence to support either appellant's claim of self-defense or the government's assault consummated by a battery allegation. Having found little evidence to support either side, we are unable to conclude beyond a reasonable doubt that appellant's touching of SSG DM was unlawful.

## CONCLUSION

Appellant's conviction of Specification 1 of the Additional Charge is SET ASIDE and DISMISSED. The remaining findings of Guilty are AFFIRMED.

To determine whether to reassess a sentence or order a sentence rehearing, we consider the totality of the circumstances presented, including: whether there are dramatic changes in the penalty landscape and exposure; whether appellant chose sentencing by members or a military judge alone; whether the nature of the remaining offenses captures the gravamen of criminal conduct included within the original offenses; whether significant or aggravating circumstances addressed at the court-martial remain admissible and relevant to the remaining offenses; and whether the remaining offenses are of a type that we have the experience and familiarity with to reliably determine what sentence would have been imposed at trial. *See United States v. Winckelmann*, 73 M.J. 11, 15-16 (C.A.A.F. 2013), *United States v. Sales*, 22 M.J. 305, 307-08 (C.M.A. 1986).

Reassessing the sentence on the basis of the errors noted, the entire record, and in accordance with the principles of *Sales* and *Winckelmann*, we AFFIRM only so much of the sentence as provides for a bad-conduct discharge, thirty-five months of confinement, a reprimand, and reduction to the grade of E-1. All rights, privileges, and property of which appellant has been deprived by virtue of that portion of his sentence set aside by this decision are ordered restored. *See* UCMJ arts. 58b(c) and 75(a).

Senior Judge MULLIGAN and Judge BROOKHART concur.

FOR THE COURT:

MALCOLM H. SQUIRES, JR.
Clerk of Court

4